SAMSON CORDAGE WORKS v. PURITAN CORDAGE MILLS.

(Circuit Court, W. D. Kentucky. November 11, 1911.)

TRADE-MARKS AND TRADE-NAMES (§ 17*)—PROCESS OF MARKING CORD—AP-
PROPRIATION.

A process of making checks on the surface of a cord, by twisting in
one yarn of a markedly different color, cannot be exclusively appropri-
ated for trade-mark purposes.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 20; Dec. Dig. § 17.*]

In Equity. Suit by the Samson Cordage Works against the Puritan
Cordage Mills. On motion for temporary injunction. Denied.

Coale & Hayes and McDermott & Ray, for complainant.
Helm & Helm, for defendant.

EVANS, District Judge. There was on yesterday an interesting
argument of this case, and I will briefly state the reasons for the con-
clusion I have reached upon the motion for a temporary injunction,
though without undertaking to comment upon the very meager line
of authorities bearing directly upon the question.

The complainant manufactures and sells cord of an excellent qual-
ity and wide reputation, commonly called, I believe, "Samson's Spotted
Cord," in respect to which it claims to have a trade-mark which is
being infringed by the defendant. Complainant's fabric is a cord,
in the making of which probably a dozen yarns are twisted and inter-
twined in regular order. A careful examination of the cord itself
will disclose that all of these yarns, except one, are of the same color;
that that one is of a markedly different color, though of equal qual-
ity and fineness with the others; and that when, in the process of
fabrication, these yarns are twisted and intertwined, numerous little
figures, which, though rhomboidal in form, I shall call "checks" are
produced by the appearance and disappearance of each yarn on the
exterior surface. These checks, as I have called them, for want of
a better short name, are somewhat in the technical shape of a lozenge.
They cover practically all of the surface of the cord. Each of them,
however, is separate and distinct from the others, and they differ only
in color. If the yarn happens to be blue, of course, the check which
it makes is blue, and as the fabrication progresses the blue checks will
spirally follow at regular intervals the course and reappearance of
that yarn to the end. And so with every other separate yarn used.
There is no difference in the shape or appearance on the outside sur-
face of the cord between these checks, except in their color. Other-
wise they are all precisely alike. These checks, made as I have stated,
are the natural and inevitable consequence of the process of twisting,
plaiting, and intertwining the yarns into cord, and they are not and
cannot be "symbols or devices arbitrary in character and selection"
(38 Cyc. 729), chosen as marks to indicate, by use and association, the
origin of the fabric in which they appear. The only choice or selec-
tion made by the manufacturer is in the color of one of the yarns.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This choice and use of the particular color makes the only difference in the appearance of the cord, or in what we have called the checks which decorate its exterior surface.

We may assume for the present that the complainant has long used one yarn which is of a different color from the others in making a. spotted cord; but such things as mere "colors" and "spots" cannot be exclusively appropriated by any person for a trade-mark, or for any other purpose, though that alone seems to be what is attempted here. Those two things, speaking generally, are, of public right, open to the choice and use of everybody, except in rare cases of combination with other surrounding things. Neither can the right to twist and plait into the cord one yarn, which in color differs from the others used, be exclusively appropriated by any one person for trade-mark purposes. A right so simple and probably so ancient must in its very nature be, and obviously it is, one which is and has always been common and open to all persons who make cordage of any kind. Nor can this result be altered or in any wise affected by the fact that such use will inevitably and always make a spot or mark on the fabric which will correspond with the color of the yarn used for that purpose. That natural and necessary result rather emphasizes the existence of the common right. Suppose one manufacturer should choose to use a single yarn that was blue to combine with others so as to make a blue spot, and suppose that another, for a similar purpose, should select a single yarn that was red, and so on through all the prismatic colors; it might soon be (if complainant's contention be sound) that only a few persons could use a single yarn colored differently from the others employed in the fabrication of a cord. All other cord makers might have to use uniform colors, however much they might desire variety. And this principle might be extended to all sorts of manufactured articles.

But we need not pursue the subject further. All these things considered, and for the purposes of the motion for a temporary injunction at least, we must hold that the complainant has not brought itself within the established principles of the law of trade-marks, however much the facts might by some possibility indicate unfair competition. Upon the latter proposition, however, we express no opinion whatever.

The complainant for some purpose has read in the evidence in support of its motion a copy of the registration of its trade-mark made in 1894. But there is a very distinct difference between the trade-mark which was registered and the one described in the bill of complaint, which, for present purposes, is the only one that concerns us. It does not definitely appear when the use of the latter begun, though it may fairly be inferred that it was used long before the defendant began to pursue another plan in which two highly colored yarns are used, instead of only one. By this means the shape of the checks on the surface of the cord made by the defendant is, in fact, somewhat different from that of the complainant, though the result is a spotted cord, which in a general way by an ordinary person might be taken to be the complainant's fabric, if it were not closely examined.

To say the least, we have not as yet been able to remove grave doubts of the validity of complainant's trade-mark, and as granting a temporary injunction is discretionary, and as such relief should be withheld except in reasonably clear cases we will overrule the motion now under consideration.