SAMSON CORDAGE WORKS v. PURITAN CORDAGE MILLS (two cases).

(Circuit Court of Appeals, Sixth Circuit.    January 13, 1914.)

Nos. 2358, 2359.

1. TRADE-MARKS AND TRADE-NAMES (§ 17*) — VALIDITY — USE OF COLORED STRANDS IN SASH CORD.

The marking of sash cord in the manufacture with a series of spots arranged spirally about the circumference, each shaped in the form of a lozenge, the spots being made in the ordinary process of machine braiding of sash cord by combining one colored strand with eleven undyed strands, the result being that the colored strand appears and disappears from time to time causing the appearance at regular intervals of colored spots somewhat irregular in shape, but more or less rhomboidal in form, and traceable in a spiral path about the surface of the cord, not restricted to any particular color, does not constitute a valid trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 20; Dec. Dig. § 17.*]

2. TRADE-MARKS AND TRADE-NAMES (§§ 71, 75*)—SUIT FOR UNFAIR COMPETITION.

The existence of a valid trade-mark is not essential to a right of action for unfair competition in which the essence of the wrong consists in the palming off of the merchandise of one person for that of another, and the use of the mark of another which is invalid as a trade-mark will not support a suit for unfair competition unless it is used in such a way as to constitute a fraud on purchasers.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 82, 86; Dec. Dig. §§ 71, 75.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 79*)—SUIT FOR UNFAIR COMPETITION.

A suit for infringement of trade-mark differs from one for unfair competition in that in the former the wrongful intent is presumed from the fact of infringement, while in the latter it must be proved, although an inference of such intent may be justified from the inevitable consequences of the act complained of.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 89, 90; Dec. Dig. § 79.*]

4. EQUITY (§ 148*)—MULTIFARIOUSNESS—SUITS FOR INFRINGEMENT AND FOR UNFAIR COMPETITION.

Where diverse citizenship exists between the parties and the requisite amount is involved to give a federal court jurisdiction, a cause of action for infringement of a trade-mark and one for unfair competition may be joined in one suit.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 341–367; Dec. Dig. § 148.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION—GROUNDS FOR RELIEF.

The protection against unfair competition is not limited to such imitation or conduct as would deceive a cautious and discriminating purchaser, but extends to such as would be likely to mislead the ordinary or usual buyer, including the ultimate consumer.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 95*)—SUIT FOR UNFAIR COMPETITION—PRELIMINARY INJUNCTION.

The showing *held* sufficient to entitle a complainant to a preliminary injunction against unfair competition by defendant by marking its make

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of sash cord to resemble that of complainant to such an extent as to tend to mislead purchasers.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 108; Dec. Dig. § 95.*

Imitation or simulation of trade-mark or trade-name as unfair competition, see note to John H. Rice & Co. v. Redlick Mfg. Co., 122 C. C. A. 447.]

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suits in equity by the Samson Cordage Works against the Puritan Cordage Mills. Complainant appeals from decree for defendant in first case, and order denying preliminary injunction in second case. Decree (194 Fed. 573) affirmed, and order (197 Fed. 205) reversed.

Geo. O. G. Coale and F. P. Fish, both of Boston, Mass., and McDermott & Ray and Coale & Hayes, all of Louisville, Ky., for appellant.

Helm & Helm, of Louisville, Ky., for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. Complainant, a cordage manufacturer, filed its bill (in No. 2358) for infringement of an alleged trademark upon a high-grade sash cord of its manufacture. The mark was alleged to consist in "a series of spots arranged spirally about the circumference of the cord, each shaped in the form of a lozenge." The spots were in fact made in the ordinary method of machine braiding of sash cord, by combining one colored strand with eleven undyed strands; the result being that in the regular and normal process of manufacture the colored strand appeared and disappeared from time to time, resulting in the appearance at regular intervals of spots somewhat irregular in shape but more or less rhomboidal in form, and traceable in a spiral path about the surface of the cord. Complainant used any one of several different colors, employing blue in about one-fifth of its product. The defendant braided its cord in the same normal and mechanical way, using, however, two blue strands (in place of a single colored strand), together with ten undyed strands; the result being that the spots on defendant's cord, being the width of two strands, are twice as wide as those on complainant's cord, and are not actually lozenge-shaped or rhomboidal—the space, moreover, between defendant's spots being the width of but one uncolored strand, or half the space between complainant's spots, the color on defendant's cord being characterized by it as presenting a broken and almost continuous spiral, and so distinguished (as well as by shape) from the spots on complainant's cord. Defendant answered, denying that complainant had a valid trade-mark, and asserting noninfringement and good-faith selection of its mark. A motion for temporary injunction, based on showing by affidavits and counter affidavits, was denied. 193 Fed. 274. Complainant then asked to amend its bill so as to allege unfair competition in trade. This request was denied, on the ground that

the amendment, if permitted, would either substitute a suit for unfair trade for the then pending suit of trade-mark infringement, or would result in a suit seeking relief upon two separate, distinct, and apparently contradictory causes of action, viz., "one upon a trade-mark, another which, in effect, disavows the trade-mark altogether." The case was then submitted for final hearing upon the affidavits filed. The bill was dismissed, upon the ground, stated in the opinion, that "no spot made on or color imparted to a fabric as the inevitable or natural result of using the material of which the fabric is made can be basis of a trade-mark."   194 Fed. 574.

Meanwhile, after denial of the motion to amend the bill in No. 2358, a bill was filed (in No. 2359) to restrain alleged unfair competition, on the ground that complainant's mark by long use had become associated in the mind of the public with and distinctly represented complainant's manufacture; and that defendant by its imitation of complainant's distinctive spots upon the cord, and by its advertisements and dealings, was seeking to palm off its goods as those of complainant. In this bill no mention is made of the shape of the spots constituting the alleged mark. An application for temporary injunction, heard on showing and countershowing by affidavit, was denied, upon the grounds: First, that the right to employ the colored spots was not exclusively appropriable by complainant, and that it was not unfair for defendant to do what it had a legal and moral right to do; second, that defendant was not shown to have palmed off its goods as those of complainant; and, third, that if the court had any discretion in the matter of granting a temporary injunction, it should be exercised against the motion, because of complainant's election in the former case to sue for the establishment of its trade-mark. Appeal was taken from the dismissal of the bill in the trade-mark suit and from the denial of temporary injunction in the suit for unfair competition.

[1] 1. *The trade-mark.* Complainant registered its trade-mark in the United States Patent Office in 1894. It does not rely on this registration, but stands upon an alleged common-law mark consisting of the spots made and arranged as stated. The question of first importance is whether this mark is validly open to complainant's exclusive adoption, as representing goods of its manufacture. Broadly stated, complainant was at liberty to affix to its product any distinctive symbol or device, not previously appropriated, which would distinguish it from articles of the same general nature manufactured or sold by others. Amoskeag v. Trainer, 101 U. S. 51, 25 L. Ed. 993. On the other hand, a mark must be something distinct from the thing marked. That is to say, the thing itself cannot be a trade-mark of itself; although it is no objection to the validity of an otherwise good mark that it is impressed upon or inherent in the article manufactured, as in the case of a watermark upon paper, a word or symbol blown into a glass bottle or jar, or an arbitrary mark on the head of a horseshoe nail. Capewell Horse Nail Co. v. Mooney (C. C.) 167 Fed. 575; s. c., 172 Fed. 826, 97 C. C. A. 248. Again, no valid trade-mark can be acquired in the use of a color not connected with some distinctive symbol or

design. Leschen Rope Co. v. Broderick, 201 U. S. 166, 171, 26 Sup. Ct. 425, 50 L. Ed. 710; J. A. Scriven Co. v. Morris (C. C.) 154 Fed. 914, 918; Newcomer & Lewis v. Scriven Co. (C. C. A. 6th Cir.) 168 Fed. 621, 623, 94 C. C. A. 77; Diamond Match Co. v. Saginaw Match Co. (C. C. A. 6th Cir.) 142 Fed. 727, 729, 74 C. C. A. 59; Mumm v. Kirk (C. C.) 40 Fed. 589. As said by Mr. Justice Brown in Leschen Rope Co. v. Broderick, supra, 201 U. S. at page 171, 26 Sup. Ct. at page 426, 50 L. Ed. 710:

"Whether mere color can constitute a valid trade-mark may admit of doubt. Doubtless it may, if it be impressed in a particular design, as a circle, square, triangle, a cross, or a star. *But the authorities do not go farther than this.*" (Italics ours.)

And as said by the present Mr. Justice Lurton, speaking for this court in Newcomer & Lewis v. Scriven Co., supra, 168 Fed. at page 623, 94 C. C. A. at page 79:

"Color, except in connection with some definite, arbitrary design, such as when impressed upon a circle, star, cross, or other figure, or employed in definite association with some characteristics which serve to distinguish the article as made or sold by a particular person, is not the subject of monopoly as a trade-mark."

The owner of a valid trade-mark, otherwise distinctive, may, however, be protected against appropriation by a rival dealer through mere change in color. Leschen Rope Co. v. Broderick, supra, 201 U. S. at page 172, 26 Sup. Ct. 425, 50 L. Ed. 710; A. Leschen, etc., Co. v. Broderick, 36 App. D. C. 451, 455.

The pivotal question is whether the colored spots, as made and as appearing upon the surface of the cord, constitute a distinctive symbol or design appropriable as a trade-mark. It appears that it is common for manufacturers of various kinds of twisted and braided cords, including hat cords, bell cords, fish lines, wrapping twine, and coverings of electric wires, to use colored strands, usually for ornament merely; in some cases (especially wire coverings) as a mark of origin. Complainant claims to be the only manufacturer of braided sash cord which has adopted a colored strand for the mere purpose of showing origin of manufacture. Of course, the mere fact that the mark adds to the appearance of the article does not detract from the validity of the mark. Capewell Horse Nail Co. v. Mooney, supra. The precise question presented has been the subject of few decisions squarely in point. In Dodge Mfg. Co. v. Sewell & Day Cordage Co. (C. C.) 142 Fed. 288, it was held by Judge Lowell that a rope manufacturer, who adopted a blue thread twisted into one of the strands of its rope as a trade-mark, was not entitled to restrain another manufacturer from using a thread of a different color. The question of the validity of complainant's mark, as confined to the particular color used, was expressly passed without decision. In A. Leschen & Sons Rope Co. v. Macomber & Whyte Rope Co. (C. C.) 142 Fed. 289, a trade-mark consisting of "a red or other distinctively colored streak applied to or woven in a wire rope" was held by Judge Kohlsaat invalid, not only because there could be no valid trade-mark in color alone, but for the further reason that it contained no distinctive design, but attempted

to monopolize the right to use any streak of any color, however produced in or applied to a wire rope. In A. Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 134 Fed. 571, 572, 67 C. C. A. 418, it was held by the Circuit Court of Appeals of the Eighth Circuit, speaking through Judge Amidon, that "a mark which consists simply in a colored strand in a wire rope, but is not restricted to any particular color," cannot be sustained as a valid trade-mark. It was said that in such case "it is the color which constitutes the mark, and not its configuration, and a right to vary the color indefinitely would destroy that distinctive character which must inhere in a valid trade-mark." The Supreme Court, in affirming the case upon the ground that a trade-mark for wire rope of a red or other distinctively colored streak applied to or woven in the rope is too broad and too indefinite, found it unnecessary to decide the broad propositions asserted by the Circuit Court of Appeals to which we have referred. 201 U. S. at page 172, 26 Sup. Ct. 425, 50 L. Ed. 710. In A. Leschen & Sons Rope Co. v. Broderick, supra—which was an appeal from a dismissal by the Patent Office of opposition to an application for registration of trade-mark—the Court of Appeals of the District of Columbia (36 App. D. C. page 456) expressly left undecided the question whether a mark consisting of a stripe of uniform width spirally disposed around the surface of wire rope may constitute a valid trade-mark.

In considering whether complainant's "spots" are distinctive in form and arrangement, and such as may be adopted as a mark of origin, or whether in ultimate analysis it is color rather than distinctive configuration that constitutes the mark, the fact that in the normal mechanical braiding of the cord with a colored strand "spots" are bound to appear "spirally," in whatever form the exposed portion of the strand takes, seems pertinent, as does the fact that the spots do not naturally indicate origin of manufacture, either as being arbitrary marks or otherwise; but prima facie suggest only ornamental dressing. While there is a difference in form between the spot created by the braiding of a colored strand in a sash cord and the form taken by a section of the colored strand or thread appearing from time to time on the surface of a twisted rope, the difference appears to us to be not in principle but in degree. How, apart from its color, can the exposed, though broken, surface of a braided strand be said to be a distinctive design, when the product of all manufacturers normally presents precisely the same feature and the same design; for (to apply the expressions of Mr. Justice Lurton in Newcomer & Lewis v. Scriven Co., which we have quoted above) the color thus is not impressed upon an "arbitrary design," nor is it employed in association with "characteristics which serve to distinguish the article as made and sold by" complainant. In the absence of controlling authority to the contrary, we are constrained to agree with the views expressed by the Circuit Court of Appeals of the Eighth Circuit. This, we think, results in a denial of the validity of complainant's trade-mark. It is true that in the rope cases stress was laid upon the fact that the use of a colored strand is the only practicable way of marking rope, while it appears here that one manufacturer of sash cord stamps his name upon every foot of his product.

But this distinction does not impress us as controlling, for the parties seem to agree that a mark upon sash cord, to be effective, should be substantially permanent in character; and there may be danger that a mark applied upon the surface of the cord would be subject to a wearing off by use, and thus fail in one of the suggested purposes of a permanent mark, viz., to enable the user, when replacing the cord after years of use, to identify it by reference to its inherent marks; and, on the other hand, the use of a colored strand in a wire rope, being unusual, would be more distinctive, and so more naturally suggestive of origin, than a colored spot in a braided cord of a general type not infrequently so ornamented. The fact that the spot would be covered when the cord is in use cuts little figure. Complainant's alleged mark, if infringed by that of defendant, occupies the field as against all colored marks effected by the use not only of one braided strand, but even of two in a twelve strand cord, and whether so arranged as that the segments appear upon the surface two together or twice as close to each other. We think this result would give complainant an unwarranted monopoly, and that the District Court rightly dismissed the bill in the trade-mark case.

[2, 3] 2. *Unfair competition.* The existence of a valid trade-mark is not essential to a right of action for unfair competition (Elgin Watch Co. v. Illinois Watch Co., 179 U. S. 665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365; Wolf Bros. & Co. v. Hamilton-Brown Shoe Co. [C. C. A. 8th Cir.] 165 Fed. 413, 415, 91 C. C. A. 363), in which action the essence of the wrong consists in the palming off of the merchandise of one person for that of another (Elgin Watch Co. v. Illinois Watch Co., supra; Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 461, 31 Sup. Ct. 456, 55 L. Ed. 536; Rathbone, Sard & Co. v. Champion Steel Range Co. [C. C. A. 6th Cir.] 189 Fed. 26, 33, 110 C. C. A. 596, 37 L. R. A. [N. S.] 258). Unless such palming off is shown, the action fails. Coats v. Merrick Thread Co., 149 U. S. 562, 573, 13 Sup. Ct. 966, 37 L. Ed. 847; Howe Scale Co. v. Wyckoff, 198 U. S. 118, 140, 25 Sup. Ct. 609, 49 L. Ed. 972. And so unfair competition cannot be predicated alone on the use of another's mark which is invalid as a trade-mark because not appropriable as such; that is to say, when not used in such way as to amount to a fraud upon the public. Paint Co. v. Asphalt Co., supra. An important respect in which the action for infringement of trade-mark differs from that for unfair competition is that in the former the wrongful intent is presumed from the fact of infringement, while in the latter recovery can be had only on proof of wrongful intent in fact, although an inference of such intent may be justified "from the inevitable consequences of the act complained of." Elgin Watch Co. Case, supra, 179 U. S. at page 674, 21 Sup. Ct. at page 270, 45 L. Ed. 365.

[4] The diverse citizenship of the parties, in connection with the amount involved, gave the District Court jurisdiction over the suit for unfair competition, as well as the action for infringement of the claimed common-law trade-mark. Paint Co. v. Asphalt Co., supra, 220 U. S. at page 456, 31 Sup. Ct. 456, 55 L. Ed. 536. There is no inconsistency between the two actions. Both pertain to the same broad

subject of unfair competition. Merriam v. Saalfield (C. C. A. 6th Cir.) 198 Fed. 369, 372, 117 C. C. A. 245. Nor is there any objection, on either principle or authority, to the joining of the two causes of action in one suit; on the contrary, such joinder is usually to be preferred as preventing an unnecessary suit. G. Heileman Brewing Co. v. Independent Brewing Co. (C. C. A. 9th Cir.) 191 Fed. 489, 492, 112 C. C. A. 133. Several cases in the Supreme Court and in this court illustrating the practice of such joinder are cited in the margin.[1] It follows that complainant's insistence upon prosecuting its trade-mark suit and the latter's pendency on appeal in this court were not grounds for denying a temporary injunction in the suit for unfair competition.

There remains the question whether the District Court properly exercised its discretion in denying injunction upon the meritorious ground that a case of unfair competition was not made out. There was testimony that the form and arrangement of complainant's "spots" had by long use become associated in the public mind as representing complainant's manufacture, and that defendant's mark so far resembled complainant's as that the former's cord could easily be mistaken for that of the latter and sold as such, especially if the label had been removed and the goods were not shown side by side. And the district judge in his opinion (193 Fed. p. 275) denying a temporary injunction in the trade-mark case, spoke of defendant's cord as a "spotted cord, which, in a general way, by an ordinary person, might be taken to be complainant's fabric, if it were not closely examined." The record amply supports this conclusion.

There was also testimony tending to show that the labels were not always on the "hanks" even when sold by the piece, being liable to destruction by wear, and, of course, subject to purposeful removal; and that sales of less than full pieces were sometimes made to persons other than dealers and architects; also, that purchases had been made (apparently in preparation for suit) tending to show that some dealers were selling defendant's cord as "spot cord," which is complainant's trade-name; also, that an architect, as well as a contractor, had been misled by its appearance into passing defendant's cord for "spot cord," which had been specified; also, testimony from which an intent to get the benefit of the reputation of complainant's cord might be inferred from correspondence and advertising. This testimony tended prima facie to make a case of unfair competition. Defendant replied by counterproofs and explanations tending, among other things, to show nonliability to confusion on the part of the ordinary purchaser between the two marks, and asserting an absence of intent to mislead or confuse, and an attempt to adopt a mark which should not conflict with that of any other manufacturer.

The district judge seems to have based his conclusion that the charge of unfair competition in fact was not established largely on the differ-

[1] Coats v. Merrick Thread Co., supra; Paint Co. v. Asphalt Co., supra; Newcomer & Lewis v. Scriven Co., supra; Dietz v. Horton Mfg. Co., 170 Fed. 865, 96 C. C. A. 41; Edward Hilker Mop Co. v. U. S. Mop Co., 191 Fed. 613, 112 C. C. A. 176; Gaines v. Turner-Looker Co., 204 Fed. 553, 123 C. C. A. 79.

ence between labels, including the supposed nonlikelihood that their use would permit any but a grossly careless person to be deceived, and a finding of good faith on defendant's part with respect to the use and intended preservation of the labels, at the same time expressing the view that defendant was "under no obligation to complainant to put on labels of any sort." Defendant's wrappers do clearly distinguish its product from complainant's; and if the cord were sold only in wrappers, and to observing dealers or customers, there could be little danger of misleading, in the absence of actual fraud on the part of dealers; for which fraud, unless participated in or encouraged by defendant, it would not be responsible, provided it had done its legal duty in distinguishing its own product from that of complainant. Rathbone, Sard & Co. v. Champion Steel Range Co., supra, 189 Fed. at page 33, 110 C. C. A. 596, 37 L. R. A. (N. S.) 258.

[5] However, the protection against unfair competition is not limited to such imitation or conduct as would deceive a cautious and discriminating purchaser, but includes such as would be likely to mislead the ordinary or usual buyer; and the liability of the ultimate consumer to be misled must be reckoned with. Edward Hilker Mop Co. v. U. S. Mop Co., supra; Coco-Cola Co. v. Gay-Ola Co. (C. C. A. 6th Cir.) 200 Fed. 720, 723, 119 C. C. A. 164; Gaines v. Turner-Looker Co., supra, 204 Fed. at page 556, 123 C. C. A. 79. And if the marking of defendant's cord was such that it was likely, by the ordinary purchaser, to be taken for complainant's cord, if not closely examined, the failure to use distinguishing labels would normally be evidence of an intent to mislead. In such case a burden would rest upon defendant to see to it that purchasers are not likely to be deceived by confusion between the two marks; and, if defendant's product cannot be so dressed or put out as substantially to assure such result, defendant should not be allowed to use the mark in question. Coca-Cola Co. v. Gay-Ola Co., supra, 200 Fed. at pages 274, 275, 119 C. C. A. 164.

[6] It is clear that upon the record presented the granting of preliminary injunction would have been well within the court's discretion. The important question is whether its denial was clearly an improvident exercise of discretion; for the general rule governing the review of orders either granting or denying preliminary injunction (as held by numerous cases in this court, some of which are cited in the margin [2]) is that the order should not be disturbed unless it clearly appears that the court below has exercised its discretion upon a wholly erroneous conception of pertinent facts or law. We think the court did intend to decide that defendant was not shown in fact to have intended, and that its conduct in so manufacturing and putting out its cord did not in fact tend, to pass off its product as that of complainant; and, if so, the mere fact that other and untenable grounds of denial were stated would not justify reversal. But the conclusion stated was

[2] Duplex Printing Press Co. v. Campbell Printing Press & M. Co., 69 Fed. 250, 252, 16 C. C. A. 220; Shelbyville v. Glover, 184 Fed. 234, 238, 106 C. C. A. 376; Grand Rapids v. Warren Bros. Co., 196 Fed. 892, 894, 896, 116 C. C. A. 454; Acme Acetylene Co. v. Commercial Acetylene Co., 192 Fed. 321, 323, 112 C. C. A. 573; Louisville & N. Ry. Co. v. Western Union Telegraph Co. (C. C. A.) 207 Fed. 1, 4.

reached while the court was apparently laboring under the misapprehension of law that there could be no unfairness in defendant's use of the colored spots because of its supposed unqualified right to such use (for the reason that they were not subject to complainant's exclusive appropriation), and that defendant was under no obligation to use labels of any kind; and this misapprehension would, we think, naturally affect the ultimate conclusion of fact reached. We therefore think we are called upon to exercise our own judicial discretion with respect to the issuing of injunction.

Taking into account the evidence presented and its tendency, we are constrained to the view that injunction should issue restraining defendant generally (pending final hearing upon the merits) from making, marketing, or advertising sash cord in any way tending to mislead the public into believing that the cord made or sold by it is complainant's product. Inasmuch, however, as the greater part of defendant's stock now on hand has presumably been manufactured since the denial of injunction below, and so, in a sense, under the implied approval of the District Court, and having in mind that on this application for temporary injunction we balance considerations of convenience and inconvenience, rather than finally determine the rights of the parties, we think defendant should be permitted to sell, as now marked and labeled, its stock on hand at the date of filing this opinion, on giving satisfactory bond to account for such profits and damages resulting from the sale of that stock as complainant may ultimately be found entitled to. Otherwise, and as to stock not on hand when this opinion is filed, the manufacture and sale of defendant's cord, as now marked, should be specifically enjoined, unless it shall be so put out as effectively and permanently to distinguish it from complainant's product. There now occurs to us no practicable way in which, with its present markings, it can be so dressed or put out as to secure the result stated. We do not, however, definitely decide that there is no practicable way of so securing such result. It may be considered by the District Court, as may also the question whether injunction bond should be required of complainant; and, if so, the amount thereof, together with any and all other questions of detail which may arise upon settlement of the order of injunction below. Of course, we have not attempted to determine what modification, open to defendant, of the form of its present mark upon the cord, would sufficiently distinguish the latter from complainant's product.

The order of denial in No. 2359 is reversed, with costs, and the case remanded to the District Court with directions to issue temporary injunction in accordance with the views expressed in this opinion. The final decree in No. 2358 is affirmed, with costs.