## A. LESCHEN & SONS ROPE COMPANY *v.* BRODERICK & BASCOM ROPE COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 187. Argued March 1, 1906.—Decided March 19, 1906.

A trade-mark for wire rope of a red or other distinctively colored streak applied to or woven in the rope is too wide and too indefinite.

Where color is made the essential feature of a trade-mark it must be so

---

[1] For abstracts of arguments of counsel see *ante,* p. 157, 158.

defined or connected with some symbol or design that other manufacturers may know what they can safely do.

A trade-mark not limited to a particular color must stand or fall in its entirety and if the description is too broad it cannot be sustained by proof that only a particular color is used.

*Quære,* whether mere color not impressed in a particular design can constitute a valid trade-mark.

In an equity action between citizens of the same State for infringement of trade-mark the jurisdiction of the Federal court depends solely on whether plaintiff's registered trade-mark is valid, and if it is not valid jurisdiction cannot be assumed of the case as one where defendant has used plaintiff's device for the purpose of fraudulently palming off his goods as those of the plaintiff.

THIS was a bill in equity brought in the Circuit Court for the Eastern District of Missouri by the appellant, a Missouri corporation, against the appellee, another Missouri corporation, for the infringement of a trade-mark for wire rope, registered under the act of Congress of March 3, 1881, 21 Stat. 502.

The bill alleged that the plaintiff, the A. Leschen & Sons Rope Company, in 1888 had "adopted for its use as a trademark for its highest and best grade of wire rope, a strand of a different color from the other strands of the rope, the said trade-mark then and now being effected by your orator by painting one of the strands of the rope so as to make it distinctly unlike the other strands of the rope;" that it had continuously used the trade-mark to the present day; that it had been extensively advertised; that its sale had been very great, and that the company had obtained, December 4, 1900, a registration of such trade-mark in the office of the Commissioner of Patents.

The bill further averred that early in the year 1900 the defendant company "commenced to paint one of the strands of its wire rope so as to make it of a distinctly different color from the other strands of the rope;" that on October 31, 1900, it applied to the Commissioner of Patents for a registration; that the Commissioner declared an interference with the plaintiff, upon which proofs were taken, the case fully

argued, and plaintiff was declared to be the first to adopt the trade-mark; that notwithstanding this, defendant. continued its unlawful use of this trade-mark with the intent. to defraud plaintiff, to deceive the public, and to take unfair advantage of the demand for plaintiff's wire ropes; and that said mark is being used by said defendant to make sales of rope upon the strength of plaintiff's reputation. The bill further alleged the use of the trade-mark by both parties in commerce between the United States and foreign countries.

Defendant demurred on the ground that the trade-mark set up in the bill was not a lawful and valid trade-mark. The demurrer was sustained, the bill dismissed (123 Fed. Rep. 149), and the decree of the Circuit Court affirmed by the Circuit Court of Appeals. 134 Fed. Rep. 571.

Mr. *Melville Church*, with whom Mr. *Hervey S. Knight*, Mr. *J. C. Jones* and Mr. *George H. Knight* were on the brief, for appellant:

The marking of appellant's goods was such a distinctive mark of authenticity as to bring it clearly within the protection of the law. *Elgin Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665. The complainant's trade-mark is not merely descriptive in the sense that it was taken from or descriptive of the place where it was produced. *Brown Chemical Co.* v. *Meyer*, 139 U. S. 540; *Canal Co.* v. *Clark*, 13 Wall. 311; *Elgin National Watch Co.* v. *Illinois Watch Case Co.*, 179 U. S. 665.

The application of the distinctive colored streak throughout the entire length of appellant's goods does not take it out of the category of distinctive trade-marks. If it is good when applied to the first few feet of a coil of rope it is equally good for its entire length. A familiar example of this is the watermarking of paper.

The act of March 3, 1881, lodges judicial power in the Commissioner of Patents. *United States* v. *Duell*, 172 U. S. 576; *Bernadine* v. *Seymour*, 10 App. D. C. 294. The judgment of the Commissioner, therefore, on the question of priority nec-

essarily involved the question of validity. *Hill* v. *Wooster*, 132 U. S. 693. The question has become *res judicata* and the defendant cannot question the decision in this proceeding between the same parties and in respect to the same subject matter. *Aurora City* v. *West*, 7 Wall. 82; *Last Chance Mining Co.* v. *Tyler Mining Co.*, 157 U. S. 683.

There was no appearance for appellee.

MR. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

As both parties are citizens of the State of Missouri, the jurisdiction of the Circuit Court can only be sustained upon the theory that the case is one arising under the Constitution and laws of the United States.

By an act of Congress of July 8, 1870, 16 Stat. 198, 210, § 77, to revise the statutes relating to patents and copyrights, Rev. Stat. § 4937, permission was given citizens of the United States and some others, "who are entitled to the exclusive use of any lawful trade-mark, or intend to adopt and use any trade-mark for exclusive use within the United States," to obtain registration of such trade-mark in the Patent Office; and by act of August 14, 1876, 19 Stat. 141, a punishment was provided for a fraudulent use of such trade-marks by others. But in the *Trade-mark Cases*, 100 U. S. 82, this legislation was declared to be unconstitutional upon the ground that it was intended to embrace all commerce, including that between citizens of the same State, and it was held that, if the power of Congress extended to the registration of trade-marks at all, it must be limited to their use in commerce with foreign nations and between the several States and with the Indian tribes.

Apparently in consequence of this decision, Congress, by the act of March 3, 1881, 21 Stat. 502, passed a new act, declaring that the "owners of trade-marks used in commerce with foreign nations, or with the Indian tribes, provided such owners shall

be domiciled in the United States, or located in any foreign country, or tribes, which by treaty, convention, or law, affords similar privileges to citizens of the United States, may obtain registration of such trade-marks . . . by causing to be recorded at the Patent Office a statement specifying name, domicil, location, and citizenship of the party applying; . . . a description of the trade-mark itself with fac similes thereof, and a statement of the mode in which the same is applied and affixed to goods," etc.

The registration of the trade-mark in question contains the following description:

"The trade-mark consists of a red or other distinctively colored streak applied to or woven in a wire rope. The color of the streak may be varied at will, so long as it is distinctive from the color and body of the rope.

"The essential feature of the trade-mark is the streak of distinctive color produced in or applied to a wire rope.

"This mark is usually applied by painting one strand of the wire rope a distinctive color, usually red."

It is true that the drawing annexed to the registration, a copy of which is here given, as well as the exhibits furnished, shows one of the strands colored red; and if the trade-mark were restricted to a strand thus colored, perhaps it might be sustained; but the description of a colored streak, which would

be answered by a streak of any color painted spirally *with* the strand, longitudinally *across* the strands, or by a circular streak around the rope, was held by both courts, and we think properly, too indefinite to be the subject of a valid trade-mark. Certainly a trade-mark could not be claimed of a rope; the en-

tire surface of which was colored; and if color be made the es-' sential feature, it should be so defined, or connected with some symbol or design, that other manufacturers may know what they may safely do. Upon the plaintiff's theory, a wire rope containing a streak of any description or of any color would be an infringement, and a manufacturer honestly desiring to distinguish his wire rope from that of the plaintiff's by difference in color might, by adopting a white streak running along the length of the rope across the strands, find himself an infringer, when his real object may have been to obtain a mark which would distinguish his manufacture from that of the plaintiff's. Even if it were conceded that a person might claim a wire rope colored red or white, or any other color, it would clearly be too broad to embrace all colors. So, although it might be possible to claim the imprint of a colored figure on a wire rope, the figures should be so described that other manufacturers would know how to avoid it. If the trade-mark be a colored streak, it should be, at least, described and a statement of the mode in which the same is applied and affixed to the rope; and a trade-mark which may be infringed by a streak of any color, however applied, is manifestly too broad.

It would not aid plaintiff's case even if it were shown that it made use of a colored strand, and that defendant made use of a strand similarly colored, since the trade-mark must stand or fall in its entirety, and if the description therein be too broad, it cannot be sustained by showing that defendant imitated its color and its method of applying it. Perhaps, however, the defendant might be liable under a bill framed upon the theory that it was endeavoring to dispose of its goods as those of the plaintiff.

Whether mere color can constitute a valid trade-mark may admit of doubt. Doubtless it may, if it be impressed in a particular design, as a circle, square, triangle, a cross, or a star. But the authorities do not go farther than this. In the case of *Handon's Trade-mark*, 37 Chan. Div. 112, in which a trade-mark was claimed for a red, white and blue label, in imitation

of the French tri-color, for French coffee, it was held not entitled to registration under the English statute, which requires a trade-mark to be distinctive in order to. be valid.   The court remarked as follows:

"It is the plain intention of the act that, where the distinction of a mark depends upon color, that will not do.   You may register a mark, which is otherwise distinctive, in color, and that gives you the right to use it in any color you like; but you cannot register a mark of which the only distinction is the use of a color, because practically under the terms of the act that would give you a monopoly of all the colors of the rainbow."

It is unnecessary to express an opinion whether, if the trade-mark had been restricted to a strand of rope distinctively colored, it would have been valid.   As already observed, the claim is much broader than this.   Nor can we assume jurisdiction of this case as one wherein the defendant had made use of plaintiff's device for the purpose of defrauding the plaintiff and palming off its goods upon the public as of the plaintiff's manufacture.   Our jurisdiction depends solely upon the question whether plaintiff has a registered trade-mark valid under the act of Congress, and, for the reasons above given, we think it has. not.

*Affirmed.*