THADDEUS DAVIDS CO. v. DAVIDS et al.

(Circuit Court, S. D. New York. December 15, 1908.)

1. COURTS (§ 292*)—FEDERAL COURTS—JURISDICTION.

Where there is no diversity of citizenship in an action in the federal court for infringement of trade-mark and unfair competition, jurisdiction can only be sustained in case there is a cause of action for infringement of a valid trade-mark.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 834; Dec. Dig. § 292.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRADE-MARKS AND TRADE-NAMES (§ 10*)—VALIDITY—STATUTES.

Act Cong. Feb. 20, 1905, c. 592, § 1, 33 Stat. 724 (U. S. Comp. St. Supp. 1907, p. 1008), regulating trade-marks, and providing (section 2) that nothing shall prevent the registration of any trade-mark used by the applicant or his predecessors or assigns in commerce, etc., for 10 years next preceding the passage of the act, did not make a surname a valid trade-mark which did not before constitute a valid trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 14; Dec. Dig. § 10.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 10*) — FAMILY SURNAME — SUBJECT OF TRADE-MARK.

Since every man is entitled to use his name reasonably and honestly in every way, and cannot be obliged to abandon or unreasonably restrict such use, a family surname is not the subject of a valid trade-mark as against others of the same name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 14; Dec. Dig. § 10.*

Right to use one's own name, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malzkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 357.]

4. TRADE-MARKS AND TRADE-NAMES (§ 10*)—FAMILY NAME—SUBJECT OF TRADE-MARK.

Complainant corporation, the Thaddeus Davids Company, and its predecessors, owned and controlled by persons whose family name was Davids, had used the word "Davids" as a trade-mark in connection with the sale of inks, mucilage, etc., for 25 years. They registered this name as a trade-mark, and placed it at the top of the label, near the middle of which was a word or words indicating the character of the goods as "ink" or "mucilage," and at the bottom the words "Thaddeus Davids Company, New York." Defendant, also composed of persons whose surname was Davids, adopted it as a trade-name, and the corporate name, "Davids Manufacturing Company," using the name "Davids" in a similar manner, except that the words "Davids Manufacturing Company" were placed in prominent type at the bottom of their label. *Held* that, the word "Davids" not being a proper subject of a trade-mark, defendant's use of the name was not objectionable.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 14; Dec. Dig. § 10.*]

In Equity. Demurrer to bill of complaint in action for infringement of complainant's alleged trade-mark.

W. P. Preble, Jr., for complainant.
Emerson R. Newell, for defendants.

RAY, District Judge. As both the complainant and defendants are citizens and residents of the state of New York, this action cannot be sustained as one for unfair competition in trade solely. Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 672, 677, 21 Sup. Ct. 270, 45 L. Ed. 365; Burt v. Smith, 71 Fed. 161, 17 C. C. A. 573; Leschen & Co. v. Broderick & Co., 201 U. S. 166, 167, 172, 26 Sup. Ct. 425, 50 L. Ed. 710; Hopkins, Unfair Trade, 216.

Jurisdiction here depends on a cause of action being stated for infringement of a valid trade-mark. The defendants appear specially and raise the question properly. July 10, 1906, the complainant company filed its application for registration of its alleged trade-mark consisting of the single word "Davids," printed in ordinary large type;

and not interwoven or connected in any distinctive or particular manner, or printed in connection with any portrait. It was registered January 22, 1907. The statement, which is accompanied by the usual declaration under oath, reads as follows:

"To All Whom It May Concern:

"Be it known that the Thaddeus Davids Company, a corporation organized under the laws of the state of New York, located and doing business in New York City, county of New York, in the state of New York, has adopted for its use the trade-mark shown in the accompanying drawing.

"This mark has been continuously used in the business of said corporation and its predecessor, Thaddeus Davids, since about 1825.

"The general class of merchandise to which the mark is appropriated is class 60, inks and inking materials, and the particular description of goods comprised in such class upon which it is used is writing-inks of all varieties, hectograph-ink, show-card, indelible and stamping ink, and stamp-pads.

"It is customary to print the mark upon labels which are attached to the receptacles containing the goods.          Thaddeus Davids Company,
"By E. W. Davids, Secy."

This name "Davids" is the surname of the members of complainant's company and of each of the defendants. Thaddeus Davids, who first adopted it as a trade-name, was the predecessor of Thaddeus Davids Company. The bill of complaint alleges that complainant company and its predecessor have used it for 25 years. The contention of the complainant is that under the so-called "ten years clause" of the trade-mark act of February 20, 1905, c. 592, § 1, 33 Stat. 724 (U. S. Comp. St. Supp. 1907, p. 1008), the complainant has a valid trade-mark in the name "Davids" given by that statute, it having made registration thereof, and it and its predecessor having had the word "in actual and exclusive use as a trade-mark" for 10 years next preceding the passage of that act.

Section 1 of the act provides that the owner of a trade-mark may obtain registration by complying with the provisions of the act. Section 5 (33 Stat. 725 [U. S. Comp. St. Supp. 1907, p. 1010]) provides that "no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark on account of the nature of such mark unless such mark" consists of immoral or scandalous matter; consists of a flag, coat of arms, or a design or picture adopted by a fraternal society. It then provides that trade-marks so identical with or so closely resembling others that confusion would result shall not be registered. It then provides that:

"No mark which consists merely in the name of an individual, firm, corporation, or association not written, printed, impressed or woven in some particular or distinctive manner or in association with a portrait of the individual or merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term shall be registered under the terms of this act."

This absolutely excludes the complainant's alleged trade-mark from registration. But two provisos follow: (1) no portrait of a living individual is to be registered as a trade-mark except with his consent in writing; and (2):

"That nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is de-

rived, in commerce with foreign nations, or among the several states, or with Indian tribes, which was in actual and exclusive use as a trade-mark of the applicant or his predecessors from which he derived title, for ten years next preceding the passage of this act."

It must have been a trade-mark and a lawful trade-mark, recognized as such by the law prior to the passage of the act. It must have been the subject of ownership and owned by the applicant, or by his predecessor "from whom he derived title." The proviso means that nothing in the act is to "prevent" the registration of a trade-mark theretofore valid as such if it had been in use, etc., 10 years. It does not purport to validate anything as a trade-mark, or to make a valid trade-mark out of a surname not before constituting a valid trade-mark. See In re American Glue Co.. 123 O. G. 999. Was this surname "Davids," the name of many different individuals, the subject of a valid trade-mark? Could it, prior to the passage of the act, have been appropriated as such? The name "Davids" is a personal name, an ordinary family surname, and is the family surname of the defendants. Every man has the right to use his name reasonably and honestly in every way, and he cannot be obliged to abandon the use of his name or to unreasonably restrict its use. Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 135, 137, 138, 139, 25 Sup. Ct. 612 (49 L. Ed. 972). And in the same case it is held, expressly decided, that:

"A personal name, an ordinary family surname, such as Remington, cannot be exclusively appropriated by any one as against others having a right to use it. It is manifestly incapable of exclusive appropriation as a valid trade-mark, and its registration as such cannot in itself give it validity."

In Elgin National Watch Co. v. Illinois Watch Case Company, 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365, it was held:

"The term 'trade-mark' means a distinctive mark of authenticity, through which the products of particular manufacturers or the vendible commodities of particular merchants may be distinguished from those of others.

"As its office is to point out distinctively the origin or ownership of the articles to which it is affixed, no sign or form of words can be appropriated as a valid trade-mark, which, from the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose. * * *

"The parties to this suit being all citizens of the same state and the word in controversy being a geographical name. which could not be properly registered as a valid trade-mark under the statute, the Circuit Court had no jurisdiction."

It follows, it seems to me, that the word "Davids" alone is not the subect of a valid trade-mark, at least as against these defendants.

The bill of complaint states that the manner in which complainant applies his said trade-mark, of which profert was made on the argument is to place such word "Davids" in prominent letters on the label pasted on the bottle containing the goods. The said word is placed near the top of the label, and the word or words indicating the character of the goods is placed near the middle of the label, as "Ink" or "Mucilage," and at or near the bottom of the label is placed the words "Thaddeus Davids Company, New York," so that the mark stood out as, for example, says the bill, "Davids Blue Ink. Thaddeus

Davids Company." This, of course, plainly indicates that the ink or mucilage is manufactured by Thaddeus Davids Company.

The infringement charged is that defendants adopted as a trademark the firm name and style "Davids Manufacturing Company," and put on the market inks, mucilage, and paste in bottles on which were pasted labels at the top of which, in prominent type, was the word "Davids," at the middle of the label the word "ink" or "mucilage" or "paste," as the case might be, and at the bottom of the label the words "Davids Manufacturing Company" in prominent type, and sold and offered for sale same as "Davids Ink," "Davids Paste," or "Davids Mucilage."

The bill of complaint then says:

"(13) That the specific act of infringement herein complained of as affecting your orator's said registered trade-mark consisted, not in the mere use of the word 'Davids' without otherwise labeling their goods to produce confusion (your orator having no objection to the mere use of the name 'C. I. Davids' on defendants' goods), but in setting said word 'Davids' in prominent type at the top of the label, the word 'Ink,' 'Paste,' or 'Mucilage' also in prominent type near the middle of the label, and the arbitrarily adopted trade-name of 'Davids Manufacturing Company' in imitation of your orator's trade-name 'Thaddeus Davids Company' at the bottom of the label."

The bill then states that these acts constitute not only an infringement of the complainant's trade-mark, but unfair competition in trade. I am of opinion that the defendants had the right to use their own name in this way, in adopting the firm or business name under which they would do business. "Thaddeus Davids Company" is sufficiently distinguished from "Davids Manufacturing Company." If the variance in name is not broad enough, it is difficult to see how the defendants can use their own surname at all. There is no lie or misrepresentation in saying "Davids Ink," or "Davids Carmine Ink," or "Davids Mucilage." Immediately thereunder are the words, in large type, "Davids Manufacturing Company." This is a plain statement to all dealers, purchasers, and users that the ink, mucilage, or paste contained in the bottle is manufactured by Davids Manufacturing Company, and not by "Thaddeus Davids Company."

In Howe Scale Co. v. Wyckoff, Seaman & Benedict, 198 U. S., at page 140, 25 Sup. Ct., at page 614 (49 L. Ed. 972) the court said:

"We hold that, in the absence of contract, fraud, or estoppel, any man may use his own name in all legitimate ways, and as a whole or a part of a corporate name."

There is no allegation that the labels imitate those of complainant in size, design, or color, or that either label has any peculiar or particular characteristics. In McLean v. Fleming, 96 U. S. 245, 252, 253, 24 L. Ed. 828, the court said:

"Everywhere courts of justice proceed upon the ground that a party has a valuable interest in the good will of his trade, and in the labels or trade-mark which he adopts to enlarge and perpetuate it. Hence it is held that he, as proprietor, is entitled to protection as against one who attempts to deprive him of the benefits resulting from the same, by using his labels and trademark without his consent and authority. Decided cases to that effect are quite numerous, and it is doubtless correct to say that a person may have a right in his own name as a trade-mark as against a trader or dealer of a dif-

ferent name; but the better opinion is that such a party is not, in general, entitled to the exclusive use of a name, merely as such, without more. Millington v. Fox, 3 Myl. & Cr. 338; Dent v. Turpin, 2 Johns. & Hem. 139; Meneely et al. v. Meneely, 62 N. Y. 427 (20 Am. Rep. 489).

"Instead of that, he cannot have such a right, even in his own name, as against another person of the same name, unless such other person uses a form of stamp or label so like that used by the complaining party as to represent that the goods of the former are of the latter's manufacture. Nor will any other name, merely as such, confer any such exclusive right, unless the name is printed in some particular manner in a label of some peculiar characteristics, so that it becomes, to some extent, identified with a particular kind of goods, or when the name is used by the party, in connection with his place of business, in such manner that it assumes the character of a trademark within the legal meaning of that term, and as such entitles the party to the protection of a court of equity, to prevent others from infringing the proprietor's exclusive right. Gilman v. Hunnewell, 122 Mass. 139; Colladay v. Baird, 4 Phil. (Pa.) 139; Sykes v. Sykes, 3 B. & C. 541; Croft v. Day, 7 Beav. 89; Burgess v. Burgess, 3 De G., M. & G. 896; Holloway v. Holloway, 13 Beav. 209; Rogers and Others v. Taintor, 97 Mass. 291."

Here is a plain statement that even when a person may have (if he ever has) a right to the use of his own name solely as a trade-mark, as against those of a different name, he is not entitled to it, "the exclusive use of a name, merely as such, without more"; that is, it must be used with some other peculiar and distinctive mark such as are prescribed by and written into the act of February 20, 1905; that is, it must be "written, printed, impressed or woven in some particular or distinctive manner, or in association with a portrait of the individual." This was the law prior to 1905, and is still the law, as I understand it.

Demurrer sustained, with costs.