### VICTOR–AMERICAN FUEL CO. v. HUER-FANO AGENCY CO. et al.*

Circuit Court of Appeals, Eighth Circuit.
November 23, 1927.

No. 7838.

1. **Trade-marks and trade-names and unfair competition** ⚖60—Trade-mark label of defendant held not so similar to complainant's as to be infringement or to deceive public.

Defendant's trade-mark, consisting of a label, though the same size and shape as complainant's, *held* not so similar in appearance as to be an infringement or a colorable imitation, which might mislead the public and constitute unfair competition.

2. **Trade-marks and trade-names and unfair competition** ⚖21—Complainant cannot claim monopoly in size or shape of trade-mark, where labels of same size and shape were previously used by others.

Complainant cannot claim monopoly in size or shape of trade-mark label, where labels of same size and shape were previously used by others.

Appeal from the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Suit in equity by the Victor-American Fuel Company against the Huerfano Agency

---

*Rehearing denied February 10, 1928.

Company and others. From the decree (15 F.[2d] 578), complainant appeals. Affirmed.

Kenaz Huffman, of Denver, Colo. (Frank E. Gove, of Denver, Colo., on the brief), for appellant.

Forrest C. Northcutt, of Denver, Colo. (Jesse G. Northcutt, of Denver, Colo., on the brief), for appellees.

Before LEWIS, Circuit Judge, and POLLOCK and SCOTT, District Judges.

LEWIS, Circuit Judge. [1] Appellant brought this suit charging infringement of its trade-marks and unfair competition in the sale of coal. It is a Maine corporation and has been engaged for many years in the production and sale of coal in Colorado and adjoining States. It filed its trade-marks in the Patent Office. There were several such filings, all for the same purpose and representing different kinds of labels to be pasted on lump coal, distributed through fine coal in cars and wagons, pasted on cars and wagons carrying its coal, and used as advertisement on letterheads and posters. The labels are flat and circular, being three inches or less in diameter and having on one side or face a combination of colors and printed words. Their predominant color is red. There is a white circular border on the outer edge, and across the center a picture of a shovel of coal, the shovel being white and the coal in it black. Printed matter in black letters is found in the white circular border, and also on the field of red within. The printed matter in the circular border is different in the different trade-marks, thus: "This label assures you this is genuine Maitland coal"—"Genuine Wadge coal is labeled. Look for this label on the lump"—"Mined and shipped only by the Victor-American Fuel Company Denver." On the red background within the white circular border are these: "I am sunshine—Maitland"—"For heat without soot get Chandler"—"Ravenwood nigger head"—"For a hot clean fire get Pinnacle." In each a picture of a shovel of coal is across the label at its approximate center. In its advertising matter the appellant used certain words claimed as slogans, as inducements to the purchase of its coal. It first began to use these trade-marks and slogans in 1916.

Appellee, Huerfano Agency Company, is the sales agent for the other defendants—appellees, who produce coal in Colorado and put it on the market in that and adjoining States through their agent. In their answer they deny infringing appellant's trade-marks, deny unfair competition and allege that the

Agency Company has for many years been using its trade-marks, which it filed in the United States Patent Office, in advertising and selling coal, using its trade-marks in the same way that appellant uses its trade-marks. The Agency Company's trade-marks, which it began using about 1918, are also circular labels, their predominating color being red or black. On the red or black background and across the center of its labels is the word "HACO," a combination of letters in its corporate name. These letters are in white on the red or black background. Above them and below them are white or red fields, the upper one being bounded by a straight line on its lower side and a semi-circular line on its upper side, and the lower one bounded by a straight line on its upper side and a semi-circular line on its lower side. In the upper field is the word "COLORADO" in red letters, if the field be white, and in black letters if it be red, and in the lower field the word "COALS" is in red letters if the field be white, and in black letters if it be red. These letters are much larger in the middle of the words and grow smaller to each side, and are unusual in form. The Agency Company also uses phrases in its advertisement, but wholly different from appellant's claimed slogans. They call attention to the word "HACO" on the Agency Company labels. Some of the obvious and marked differences between the labels are these: (a) Appellee's do not contain a picture of a shovel full of coal prominently displayed; (b) nor are its labels encircled by a white border or band; (c) nor do they contain black letters describing the coal; (d) nor black letters on a white border; (e) nor words describing the quality or origin of the coal; (f) nor the name of the mine from which produced; (g) nor the name of the company producing it—as do those of appellant. Appellant's trade-marks do not display the word "HACO," and they do not display the words "COLORADO"— "COALS," which are shown in unusual style of type on appellee's labels. Appellant's labels do not show a semi-circular background above and below a differently colored strip between them, as do appellee's. Each of appellee's labels contains but three words, displayed in comparatively large lettering for the size of the label, while each of appellant's contains a large number of words, all in plain ordinary type. The first impression gained at a mere glance, as well as the permanent and lasting one obtained from close inspection, marks a great difference in appearance between the trade-marks of appellant and those of appellee. The shovel of coal on appellant's is strikingly distinctive, and the difference in collocation of all features that have been separately noted clearly distinguishes those of appellant from appellee's. There is no claim that appellee's trade-marks are copies of appellant's; it is only argued that they are colorable imitations or simulations, that the shape, coloring and general appearance are in such near resemblance to appellant's as to likely deceive the public and induce an acceptance of appellee's labeled coals believing them to be the product of appellant; and in this way appellee Agency Company is infringing on appellant's trade-marks and engaged in unfair competition in the sale of coal. There is no proof that customers were ever misled and confused and took any of appellee's trade-marks for those of appellant, or vice versa; it tends to show the contrary, that the differences were easily observed.

[2] The proof shows that other producers and dealers in coal in the territory in which appellant's coal finds a market had been engaged in the same practice many years prior to appellant, they had filed and were using trade-marks to distinguish their coal and were using them in the same way. Their labels were circular in form and some of them contained red as the predominant color, with lettering designating a name for the coal and some the name of the dealer and its place of business. It was shown that a circular form of label was the most practical form for pasting on coal, cars and wagons. They were not as likely to become loosened and displaced as they would be if they had corners. It was also shown that red was the most practical color for use, not being so easily effaced by dirt and coal dust. However, some of the labels in use prior to the time appellant began using its labels did not predominate in red but in other colors. They were substantially of the same form and size as those later used by appellant and appellee Agency Company. This prior use by others in the same trade would seem to exclude any right to a monopoly in the shape and color of the labels. Leschen Rope Co. v. Broderick, 201 U. S. 166, 26 S. Ct. 425, 50 L. Ed. 710; Viavi Co. v. Vimedia Co. (C. C. A) 245 F. 289; Taylor v. Bostick (C. C. A.) 299 F. 232. We think the claim of colorable imitation cannot be sustained on the record. No careful inspection is required to distinguish the trade-marks. Ordinary attention by a purchaser is all that is necessary for that purpose. One who exercises ordinary care and caution could not be misled and deceived and thus induced to accept appellee's labeled coal believing it to be the coal of appellant. Specific differences are marked and the gen-

eral appearance cannot be confusing. Joseph Schlitz Brewing Co. v. Houston Ice & Brewing Co., 250 U. S. 28, 39 S. Ct. 401, 63 L. Ed. 822; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828.

It does not appear that appellees were attempting or at any time intended to palm off their coal as the coal of appellant. There is no proof that it was their purpose to deceive the public in that regard; and we have already said, in effect, that the means used by appellees in selling their coal, of which appellant complains, were not suitable in furtherance of such an intention, even though there had been a purpose to deceive. It follows appellant wholly failed to establish its charge of unfair competition. The indispensable elements of a right to relief on that ground are nowhere more clearly and better stated than in Allen B. Wrisley Co. v. Iowa Soap Co. (C. C. A.) 122 F. 796. After stating it to be the duty of a trader to distinguish his goods from those of his rival so that neither its name nor its dress will probably deceive the public or mislead the common buyer, the court there said:

"He is not, however, required to insure to the negligent or the indifferent a knowledge of the manufacture or the ownership of the articles he presents. His competitor has no better right to a monopoly of the trade of the careless and indifferent than he has, and any rule of law which would insure it to either would foster a competition as unfair and unjust as that promoted by the sale of the goods of one manufacturer as those of another. One who so names and dresses his product that a purchaser who exercises ordinary care to ascertain the sources of its manufacture can readily learn that fact by a reasonable examination of the boxes or wrappers that cover it has fairly discharged his duty to the public and to his rivals, and is guiltless of that deceit which is an indispensable element of unfair competition."

See also Wirfs v. D. W. Bosley Co. (C. C. A.) 20 F.(2d) 632.

In our judgment the court did not err in its dismisal of appellant's suit, and the decree appealed from is .

Affirmed.