**MERSHON COMPANY, Appellant,**

v.

**Frank A. PACHMAYR, and Frank A. Pachmayr, doing business under the fictitious firm name and style of Pachmayr Gun Works, Appellees.**

No. 13334.

United States Court of Appeals,
Ninth Circuit.

March 14, 1955.

Rehearing Denied June 15, 1955.

Mason & Graham, Collins Mason, William R. Graham, Los Angeles, Cal., Snyder & Fletcher, W. Cloyd Snyder, Louis T. Fletcher, South Pasadena, Cal., for appellant.

Edward Hervey, Los Angeles, Cal., Donald W. Hamblin, Pasadena, Cal., for appellee.

Before STEPHENS and CHAMBERS, Circuit Judges, and McLAUGHLIN, District Judge.

STEPHENS, Circuit Judge.

Mershon Company, Inc., failed in its action for a judgment in the United States District Court against defendant Frank A. Pachmayr, individually, and as Frank A. Pachmayr, d.b.a. Pachmayr Gun Works, in which trade mark infringement and unfair competition by the defendant was claimed, and Mershon appealed. Herein we shall refer to Mershon as appellant or sometimes as Mershon, and to Pachmayr as appellee or sometimes as Pachmayr.

Since there is a judgment of the United States District Court and also a judgment of the Superior Court of California to be considered herein, we shall refer to the former as the federal judgment or court, and to the latter as the state judgment or court. The same distinction will be made as to the federal and state courts of appeal.

Appellant company owns what it claims to be a valid United States registered trade-mark for small arms shoulder recoil pads. The claimed trade-mark consists of the words "White Line" which words are imprinted on the shoulder contact base of the pad together with a claimed symbol formed by a white line encircling the recoil pad at or near the gun stock to which it is attached.

The pad, manufactured by Mershon, is made up of leather-like or composition layers between which is a layer of treated rubber about an inch thick. The rubber layer is molded with open spaces which accommodate the gun recoil by the rubber flattening into the open spaces. The layer next to the gun stock is made of dark, hard material, and the next layer is white leather or leather-like composition and is approximately one-fourth or one-eighth of an inch thick. The edge of the white layer forms the white line. The words, "White Line" are imprinted on the pad's surface which fits the shoulder as the gun is used. The pad with the mark has been and is extensively advertised and depicted as the "White Line" pad, and it is a successful article of merchandise.

As this appeal reaches us, the facts which are undisputed are: Frank A. Pachmayr and L. E. Mershon were sometime associated in the gun accessory business. They manufactured and sold a recoil pad, as above described, to the trade, and they owned a United States registered trade-mark related to the pad which consisted of the symbol as above described. There came a time in 1936 when, by mutual consent, Pachmayr withdrew from the business, leaving Mershon or the Mershon Company owner of and continuing in the business and possessed of a valid agreement by which Pachmayr agreed not to compete in business with Mershon for thirty months. The agreement was lived up to, but after expiration of the given time, Pachmayr resumed business as Mershon's competitor and made and sold recoil pads without the white line feature or symbol. However, sometime in 1945, Pachmayr's pad appeared on the market with the white line exactly as it had been used during the period in which Pachmayr and Mershon were together. The words, "White Line", however, were not placed on the pad but Pachmayr's name as manufacturer was impressed upon it.

Early in 1946 Mershon took note of the situation and complained about it with the result that Pachmayr orally

agreed to refrain from further use of the white line and Mershon agreed not to sue for its past use. Accordingly, Pachmayr stopped use of the line, but some advertising in publications continued depicting Pachmayr's pad with the white line prominently displayed. Deeming the agreement above mentioned violated, Mershon sued Pachmayr in the California State Superior Court. The findings of fact and conclusions of law, and the judgment, of the state court are here in evidence but the pleadings are not.

The state trial court found that Pachmayr had not violated the oral agreement and that the agreement barred the suit. And the court further found that Pachmayr at all times had acted in good faith, and that at no time did he attempt to capitalize on the good will and reputation of appellant company or attempt to pass off his pads as those of Mershon's and ordered judgment for Pachmayr. Mershon Company appealed to the California District Court of Appeal, and the judgment was affirmed. Mershon Company, Inc., v. Pachmayr, 1948, 88 Cal.App.2d 901, 199 P.2d 687.

The state court of appeal was of the opinion that the state trial court was right in finding that Pachmayr had not violated the Pachmayr-Mershon oral agreement, and that the agreement barred the suit. It specifically refrained from passing on any other issue, deeming all others immaterial in the circumstances, citing Rosenfield v. Vosper, 86 Cal.App.2d 687, 692, 195 P.2d 530; Mershon v. Pachmayr, 1948, 88 Cal.App.2d 901, 199 P.2d 687.

Having won the action which had been brought against him in the state courts, Pachmayr appears to have considered his right to the use of the white line established, and he resumed its use, but without the use of the words, "White Line".

Mershon then brought the instant federal action, alleging infringement of the trade-mark and unfair competition. A third cause was alleged and dismissed. Upon trial, the federal court found, in effect, the white layer of material, which formed the distinguishing white line, not to be the subject of a valid trademark; that Pachmayr's actions did not constitute unfair competition; and that the State Superior Court judgment is final and conclusive between the parties, and acts to bar the federal court action, under the doctrine of *res judicata.*

■■ While the use of either a common law or a statutory trade-mark may constitute unfair competition or unfair trade, there are many other ways in which commercial unfairness may be committed. Then, too, the use of any certain method of selling an article may be perfectly fair in itself, but illegal when it is practiced with the intent to deceptively pass off goods of one for goods of another. We mention these fundamental principles merely to point up the inherent relationship between trade-marks and unfair trade. So important to the commercial world are marks which indicate the source of an article in trade that the common law has long afforded protection to them and latterly statutory law has been enacted for that purpose.[1] Title 15 U.S.C.A. § 1114(1) et seq.

In our case, the margin of apparent differences between gun recoil pads is quite limited. Made simply to perform their function, gun pads look much alike and, to build a trade in them by a manufacturer who markets them throughout the United States, a mark of difference would be a material aid. Pachmayr

---

1. The commentary on the Lanham Trade-Mark Act, beginning at p. 265 of Title 15 U.S.C.A. following § 1024, may be read with profit, and we quote from page 285:
    "The Inter-American Convention declares the following acts to be unjust and prohibited:
    "1.  *  *  *;
    "2. Acts calculated directly or indi-

rectly to represent that the goods or business of one person are the goods or business of another, whether by the appropriation or simulation of trade-marks, symbols, distinctive names, the imitation of labels, wrappers, containers, commercial names, or other means of identification;
    "3.  *  *  *."

and Mershon, when together, recognized the point and adopted a "mark" of striking prominence which had not the slightest function as a recoil absorber, but which would give their product a distinction. They then sought trade through expensive efforts to identify their product. Evidently, all concerned believed it was a useful mark. Pachmayr, though doing without it for a time, readopted its use and sought to reap the trade it fostered. The mark therefore and the trade with it was and is of importance to the contending parties.

In the instant federal case, the court, believing the circumstances of the state case to be parallel with those of the federal case it was hearing, stated his views in a memorandum opinion:

"* * * I believe the defense of res judicata under California law is good. * * * [B]ut also believe the Superior Court was correct in its findings of fact on the issue of unfair competition. I also find that a white line or lamination interposed in a gun recoil pad under the facts of this case is not the subject of a valid trade-mark."

Findings of fact and conclusions of law in accord with the memorandum were signed by the judge. The findings also were that it is not true that the parties to the action were the only ones to use the white line on a recoil pad. That the pads sold and advertised by Mershon had not become universally known as "White Line recoil pads". That Pachmayr had not acted in bad faith, that Mershon is estopped from litigating any facts found to be true by the Superior Court in the state action referred to in his opinion.

The great difficulty found in these findings is that the instant federal case is very different from the state case. The acts complained of in the federal case are acts performed at dates later than those in issue in the state case. The decision of the state case is based upon the Mershon-Pachmayr "not to sue, not to continue use of the mark" agreement. The state court found:

"* * * [T]hat pursuant to said verbal agreement defendant [Pachmayr] within a reasonable time, and prior to the commencement of this [state] action, ceased the manufacture of a recoil pad using a white line therein and that defendant [Pachmayr] has not since, nor is he now, manufacturing a recoil pad with a white line." (Vol. II, R., p. 243, XI.)

The facts in the federal case plainly indicate that after the affirmance of the state court judgment by the state appellate court, Pachmayr proceeded to manufacture and market the pad with the white line symbol and the pleadings in the federal case show that case to be based upon the past and present continuing use of the symbol by Pachmayr.

With the foregoing analysis, it seems clear that the two cases were not parallel with each other. The state trial court found that Pachmayr had not violated his oral agreement not to use the symbol and that Mershon's agreement to waive suit for its past use was binding upon him. The state appellate court affirmed upon the waiver. In fact, it appears that from all of the facts found in the state case that Pachmayr's hold-over advertisement in the magazine "Field and Stream" which showed the white line on a pad, was not a violation of the agreement not to use the white line and did not constitute unfair trade. If there was evidence of any substantial manufacture and sale of the pad with the white line we are not informed of it, and the state court's findings do not indicate that there was any extensive trade therein, for we find the court saying (as quoted above) "* * * that pursuant to said verbal agreement defendant within a reasonable time, and prior to the commencement of this action, ceased the manufacture of a recoil pad using a white line therein and that defendant has not since, nor is he now, manufacturing a recoil pad with a white line."

The adjudication in the state court of these facts show the case in

which they were found to be so vastly different from the issues of the instant federal case that no phase of *res judicata* or of estoppel by judgment can be maintained. The technical question as to whether the state appellate court's affirmation of the judgment upon the one point of waiver, also affirms all other findings of the state trial court, need not be considered.

■■ The words "White Line" (as they are used, with the layer of white material constituting a white line around the pad) have no possible functional value and serve no purpose as descriptive of the article or its use. The symbol thus created acts as an arbitrary mark or sign of its owner's product in the same manner that the trade name or mark "Sunbeam" serves its user, as particularly set out in our "Sunbeam" cases, together with supporting authority. See Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 1950, 183 F.2d 969, certiorari denied 340 U.S. 920, 71 S.Ct. 357, 95 L.Ed. 665; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 1951, 191 F.2d 141. Therein we held that trade names made up of recognized words in use are protected narrowly. That is, the word "Sunbeam" by trade-mark statute or by the laws of unfair trade, cannot be monopolized by anybody. If, however, as was the case in the Sunbeam cases, the trade word is not descriptive of the article in trade it will be protected in its application to the article or to the general nature of the article. The principle is applicable to the instant case. A symbol, though comprised of common words, used upon a gun pad but which is not descriptive of a gun pad, may be protected as a statutory mark and as well as against the broader conception of unfair trade. The protection, however, would not go to the extent of preventing the use of the same symbol upon a product of an entirely different nature.

Pachmayr argues that the symbol is non-effective because a color is involved. We do not read the cases as excluding color from being an element in a trade name or mark. We do not hold that color alone can be protected as a mark, but certainly color can be an element of a mark,

"* * * if it be impressed in a particular design, as a circle, square, triangle, a cross, or a star",

quoting from Leschen & Sons Rope Co. v. Broderick, 1906, 201 U.S. 166, 171, 26 S.Ct. 425, 426, 50 L.Ed. 710. The California District Court of Appeal, in Southern California Fish Co. v. White Star Canning Co., 1920, 45 Cal.App. 426, 431, 187 P. 981, 983, is to the same effect. We quote:

"It is true that sometimes a color, taken in connection with other characteristics, may serve to distinguish one's goods, and thus be protected by the courts. Fairbanks Co. v. R. W. Bell Mfg. Co., 77 F. 869, 23 C.C.A. 554, a case where, however, there was proof of specific instances of deception."

■■ A trade-mark is very different from a patent as to the law's protection, but the protection the law affords to the former is often confused with that of the latter. The patent protects the discoverer in the use, including sale of the article invented, as to which he is granted a governmental monopoly. The trade-mark is only protected *where* and *when*, and in the facts of each case, there is actual or likely confusion as to the source of the article in commerce. In our case the field of protection sought and the time it is required is definite. The evidence is conclusive in our case that the pads were in competition in the field alleged. Pachmayr himself had, in connection with Mershon, adopted and used the symbol as a mark. He had knowledge that his resumption of its use was objected to by Mershon. It could not reasonably be held that Pachmayr did not readopt it because he believed, and probably upon very convincing evidence, that the Mershon pad publicized by the white line was a favored article. See International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211, and Nims, Unfair Competition and Trade-Marks, p. 1214, Sec. 381. That

Pachmayr's pad could be easily substituted for Mershon's is well illustrated by the federal trial judge's remarks in the course of trial:

"The Court: Go ahead, but I am going to say right now you can look at these two pads, and anybody who was looking for a white line as a distinguishing mark would not be able to tell them apart. These two articles would be confusing. You can look at them and determine that. You can put on all the evidence to the contrary that you want, but the two articles speak louder than any witness has spoken here, so far as I am concerned." [R. p. 194.]

The court never deviated from this viewpoint, and the evidence is susceptible of no different conclusion. There is ample evidence in the case to require the finding that there was material confusion just as the court said there would be, and that there was strong likelihood that there would be confusion, although actual confusion is not essential in the proof of infringing a trade-mark.[2] We cite authority in the margin as to several applicable and relevant principles.[3]

2. As to likelihood of confusion by the similarity of the pads, a Mr. Clark, who conducts a gun shop, while on the stand in the federal case as a witness for Pachmayr, was questioned by the court as follows [R. p. 221]:

"The Court: You are accustomed to handling these [pads].

"Witness: That is right.

"The Court: So you would know them by a glance, but suppose you were like myself, not a sportsman, and going hunting for a pad, and you showed me the two, would I readily distinguish the difference by looking at them? * * * You would have to look at the name of the manufacturer and the way they are constructed, and that would be a matter of familiarity with recoil pads, would it not?

"The Witness: I guess you are right."

3. "* * * A manufacturer who puts in the hands of his immediate vendee the means of deceiving the consumer, is chargeable with unfair competition. The possibility that the retailer may not be honest in such matters must be taken into account by the manufacturer in selecting his brands." Nims, Unfair Competition and Trade Marks, p. 1214, Sec. 381.

One does not have to make a copy of another's *entire* trade-mark in order to infringe it, if what he does copy is enough to cause confusion. Saxlehenr v. Eisner & Mendelson Co., 179 U.S. 19, 21 S.Ct. 7, 45 L.Ed. 60. This is particularly true where the trade-mark consists of both words and a symbol having the same meaning. For instance, see the following cases:

Hutchinson v. Blumberg, C.C., 51 F. 829, 831. The plaintiff's trade-mark consisted of the word "Star" accompanied by a star-shaped symbol.

United Electric Co. v. Replogle, 53 App. D.C. 228, 289 F. 626. A red band around the base as a trade-mark was held confusingly similar to a trade-mark consisting of the words "Red Wing" accompanied by a red ring-like symbol.

Gordon's Dry Gin Co. v. Eddy & Fisher Co., 1 Cir., 246 F. 954, 955. The plaintiff's trade-mark comprised the words "Boar's head" accompanied by a picture of a boar's head. The defendant's mark was merely a picture of a boar's head. Held infringement.

Aktiengesellschaft Fur F., etc. v. Kny-Scheerer Corp., 80 F.2d 266, 23 C.C.P.A., Patents, 778. The plaintiff's trade-mark was a picture of a serpent entwined on a staff and a crown (commonly known as the physician's symbol, named "Aesculap"). Defendant did not use any symbol, but used as his trade-mark the word "Aesculap". Held confusingly similar to plaintiff's mark.

Bradstone Rubber Co. v. Coe, D.C., 34 F.Supp. 926. A trade-mark consisting of a green circular line symbol displayed on rubber heels, was held to be confusingly similar to a mark consisting of a red circular line symbol for the same goods.

Derby Oil Co. v. White Star Refining Co., 62 F.2d 984, 20 C.C.P.A., Patents, 816. A trade-mark consisting of the words "White Star" was held to be confusingly similar to a trade-mark consisting of a symbol showing a picture of a white star.

Kushner & Gillman v. Mayflower Worsted Co., 56 App.D.C. 165, 11 F.2d 462. A trade-mark consisting of the word "Mayflower" was held infringed by a trade-mark consisting of a picture of the ship "Mayflower".

For partial copy of a trade-mark, see Saalfield Pub. Co. v. G. & C. Merriam Co., 6 Cir., 238 F. 1.

See, also Title 15 U.S.C.A. § 1114(1), the trade-mark statute.

Having reviewed the whole record including inspection of exhibits and a study of the court's findings of fact and conclusions of law, we are convinced that the United States District Judge was firmly impressed with the idea that color cannot be a component of a statutory or common law trade-mark or of unfair trade. And we are convinced that such idea led to the erroneous conclusion that the symbol constituting the trade-mark is not a valid trade-mark. The essential elements of infringement of a legal trade-mark and of unfair trade on the part of appellee Pachmayr were well proved, therefore, the judgment must be reversed.

Reversed and remanded with instructions to the district court to proceed in accordance with this opinion.

Reversed and remanded.