OLIN MATHIESON CHEMICAL CORPORATION, a corporation, Appellant,

v.

The WESTERN STATES CUTLERY AND MANUFACTURING COMPANY, a corporation; H. Reginald Platts, Harlow C. Platts, Debbie C. Platts, Lois M. Platts, and Marian K. Platts, doing business under the name and style of Western States Cutlery Company; and Western States Cutlery Company, a Colorado corporation, Appellees.

No. 5082.

United States Court of Appeals Tenth Circuit.

Nov. 12, 1955.

Rehearing Denied Dec. 16, 1955.

John H. Sutherland, St. Louis, Mo. (Charles H. Haines, Jr., Denver, Colo., John H. Bruninga and Philip B. Polster, St. Louis, Mo., were with him on the brief), for appellant.

Dudley I. Hutchinson, Boulder, Colo. (T. Henry Hutchinson and Dudley I. Hutchinson, Jr., Boulder, Colo., were with him on the brief), for appellees.

Before PHILLIPS, Chief Judge, HUXMAN, Circuit Judge, and SAVAGE, District Judge.

HUXMAN, Circuit Judge.

Appellant, Olin Mathieson Chemical Corporation, filed an action in the United States District Court for the District of Colorado against appellee, the Western States Cutlery and Manufacturing Company, a corporation, et al., seeking an injunction restraining appellees from using the trade-mark "Western" and restraining them from selling or offering to sell knives bearing the trade-mark "Western" and for an accounting of profits realized from the alleged unlawful use of that trade-mark name upon knives sold. After a hearing before the court findings of fact and conclusions of law were made and based thereon judgment was entered dismissing appellant's complaint with prejudice.

Appellant, formerly operating under the name of Western Cartridge Company (a Delaware Corporation organized January 25, 1922) and now operating under the name and style of Western Cartridge Company Division of Olin Industries, Inc., and appellant's predecessors have since January 1, 1896, been engaged in the manufacture and sale of ammunition, including shotshells, rifle and revolver cartridges, shotgun and air rifle shot, shotgun wads, bullets, shotgun and rifle powders, primers, blasting caps, targets and traps, at East Alton, Illinois, and at New Haven, Connecticut. Beginning January 1, 1896, appellant's predecessors adopted "Western" as their trade-mark for such products and continuously since appellant and its predecessors have manufactured, sold and distributed large quantities of such products bearing the trade-mark "Western" thoughout the United States and in foreign countries, primarily to hunters and sportsmen. Such sales have been made through hardware stores, sporting goods stores and other similar retail outlets.

Appellant is the owner of nine registered trade-marks of the mark "Western". The first five were registered pursuant to the Trade-Mark Act of February 20, 1905, and the last four were registered under the Act of 1946. Four of these registrations registered the word "Western" in script enclosed in a diamond format. The other five merely registered the word "Western" in script, varying somewhat in the characters employed.

Appellee, the Western States Cutlery and Manufacturing Company, organized under the laws of the State of Colorado in 1913, began the selling of cutlery as a jobbing business shortly thereafter. It and its predecessors have been continuously engaged in such business from that time on. As early as 1920 appellee and its predecessors began the manufacture of cutlery, including pocket knives. Beginning at least by the early 1930's they began the manufacture and sale of hunting or outdoor knives on which the word "Western" alone or in combination was stamped. Sometimes the word "Western" alone was used. At other times "Western Boulder Colorado" was stamped on the knives with "Boulder Colorado" printed in smaller type. Some were

stamped "Western States," some with "West-Cut," some with other marks and some with no marks at all.

In the early 1930's the hunting knife production constituted about ten per cent of the business of appellee and its predecessors. Since then there has been a steady increase in the manufacture and sale of these hunting knives and later of axes, until at the present time such products constitute over seventy-five per cent of appellee's production.

Since 1918 appellees have employed the practice of issuing catalogues disclosing its cutlery stamped as above indicated, and beginning in July, 1944, its hunting knives and other cutlery products, including knives manufactured for the war effort for the Government, were advertised in national magazines such as Outdoor Life, Field and Stream and Sports Afield. Included in some of these issues were advertisements by appellant.

In 1931 appellant purchased the assets of the Winchester Repeating Arms Company of New Haven, Connecticut, and among the assets was a line of cutlery including pocket knives and hunting knives. Appellant continued to sell such knives and cutlery until 1940, when it withdrew from the cutlery business. At all times while it was selling such products they were sold under the name "Winchester."

On January 25, 1932, appellee filed in the United States Patent Office an application for the registration of the word "Western" as a trade-mark for hunting knives, pocket knives and outing knives. The application was denied on the ground that confusion might arise and that

hunters might be led to believe that they were purchasing appellant's products.

Since appellant is not manufacturing and selling cutlery or knives of any kind, there is no competition between it and appellees; and it is obvious, as found by the court, that the sale of knives and cutlery by appellees has not deprived appellant of sales of knives or of cutlery.

These principles of law must be kept in mind in resolving the controversy presented by this appeal. The law of trade-marks and trade-mark infringement is but a part of the law of unfair competition.[1] So also the mere fact that one person has adopted and used a trade-mark on his goods does not prevent another from adopting and using the same mark on goods of a different description.[2] Further, the right to a trade-mark grows out of the use and not out of the adoption of a trade-mark.[3] One other principle need be kept in mind. The law differentiates between distinctive and fanciful marks or names and general names or words in common use. The first class of words or names will be broadly protected, but the latter class will receive a much narrower protection.[4]

Tested by these principles we are of the view that the decision of the trial court is correct. "Western" is a common word which is in general use. There are any number of enterprises which employ this word in describing their business. It follows, therefore, that the word "Western" in appellant's trade-mark receives a narrow construction and the protection accorded appellant is narrowly construed.

1. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; Brown & Bigelow v. B. B. Pen Co., 8 Cir., 191 F.2d 939; Seven Up Co. v. Cheer Up Sales Co., 8 Cir., 148 F.2d 909.

2. Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 170 F.2d 958, and cases there cited; Mershon Co. v. Pachmayr, 9 Cir., 220 F. 2d 879.

3. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713.

4. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141; Majestic Mfg. Co. v. Majestic Elec. Appliance Co., 6 Cir., 172 F.2d 862; Sunbeam Lighting Co. v. Sunbeam Corp., 9 Cir., 183 F.2d 969; Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618.

It is doubtful if appellant's business, as described in its application for its trade-marks, is sufficiently comprehensive to include hunting knives within the narrow protection to which its trade-mark is entitled. The nature of its business in the nine applications for its trade-marks is variously described as "shot-shells, gun-wads, cartridges, shot, smokeless and semismokeless powder for ordnance and small-arm ammunition, primers, and blasting-caps, in Class 9 Explosives, firearms, equipments, projectiles, rifle cartridges, pistol cartridges, targets and target traps in Class 22." In three of its applications it described the trade-mark as being for "targets and target traps in Class 22, Games, toys and *sporting goods*." [5]

It is our view that under the narrow construction which must be adopted in this case there are no appropriate descriptive words which would bring cutlery, pocket knives and hunting knives under the protection of the trade-mark "Western". The only words relating even remotely to hunting knives are the words "sporting goods." That phrase again is one of broad meaning. If it is sufficiently definite to apply to hunting knives, why would it not also apply to hunting caps, coats, trousers, shoes, socks, shirts, compasses, camp cook stoves, cooking kits, as well as hundreds of other articles sportsmen use? Such a construction would tend to give appellant a monopoly of the trade-mark "Western" on practically everything that is made to be sold to sportsmen.

Furthermore, appellant is not now and never has been engaged in selling hunting knives under its registered trade-mark and as is pointed out in the principles of law hereinbefore stated the right to the protection of the trade-mark grows out of the use and not out of the adoption of the mark. Not having used the trade-mark with respect to hunting knives, it cannot complain because appellant uses the common word "Western" on the cutlery which it sells, even though it should be held that the term "sporting goods" is sufficiently definite to include hunting knives.

What has been said would not, however, warrant appellee in panning off its knives as a product of appellant or selling its products under such conditions that there would be confusion in the minds of the purchasing public with respect to whether they were purchasing appellant's products or the products of some other company. Such conduct would constitute unfair trade competition.

There is no evidence in the record warranting a statement that appellee is attempting to deceive the public into believing that knives which are stamped "Western" by it are the product of the appellant. There is no evidence that a single purchaser of a hunting knife was misled or deceived into believing that a knife purchased by him stamped "Western" was a product of appellant. Appellant made some effort to establish that confusion would result. This was done by offering the testimony of some paid investigators who went into stores which handled appellant's trade-marked products and also appellee's knives. They usually began by handing the clerk a list of objects sought. This list would contain an item of a box of Western shells and then a request for a knife made by Western Cartridge Company. Obviously, the store had no such knife. Sometimes the clerk would so state and at other times the clerk would get out a knife marked with appellee's trade-name and hand it to the investigator with the statement that it was a good knife and that it was made by Western Cartridge Company. We agree with the trial court that this evidence under the circumstances was not sufficient to establish the likelihood of confusion in the minds of the buying public.

Affirmed.

---

5. Emphasis supplied.